UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

LINDA BENJAMIN,

                    Plaintiff,                    09 Civ. 9722

        -against-                                 OPINION

THOMAS CARUSONA, CHRISTOPHER
BENNETT, LOLA COOPER MONTEMARANO,
and KEITH COOPER, as Trustees of
GURNEY'S INN CORP. LIQUIDATING TRUST,
And LCM SPA & RESORT CONSULTANTS LLC

                    Defendants,

        -and-

GURNEY'S INN RESORT & SPA LTD.,

                    Nominal Defendant.

------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1|5|10

A P P E A R A N C E S:

            Attorneys for Plaintiff

            HARWOOD FEFFER LLP
            488 Madison Avenue, 8th Floor
            New York, NY 10022
            By:  Joel C. Feffer, Esq.
                 Daniella Quitt, Esq.

            Attorneys for Defendant
            Thomas Carusona

            ROBERT & ROBERT, PLLC
            150 Broad Hollow Road
            Melville, NY 11747
            By:  Clifford S. Robert, Esq.

Attorneys for Defendant
Christopher Bennett

EATON & VAN WINKLE LLP
3 Park Avenue
New York, NY 10016
By: Ted G. Semaya, Esq.
    Joseph T. Johnson, Esq.

Attorneys for Defendants
Lola Cooper Montemarano, and
Keith Cooper, as Trustees of
Gurney's Inn Corp. Liquidating Trust,
and LCM Spa & Resort Consultants LLC

RIVKIN RADLER, LLP
926 Rexcorp Plaza
Uniondale, NY 11556
By: Evan Hayes Krinick, Esq.
    Michael P. Versichelli, Esq.

Attorneys for Nominal Defendant
Gurney's Inn Resort & Spa Ltd.

FARRELL FRITZ, P.C. (LIS)
1320 Reckson Plaza
Uniondale, NY 11556
By: James M. Wicks, Esq.
    Charlotte A. Biblow, Esq.
    Franklin C. McRoberts, Esq.

**Sweet, D.J.**

Defendants Lola Cooper Montemarano and Keith
Cooper, as Trustees of Gurney's Inn Corp. Liquidating Trust
(the "Liquidating Trust") and LCM Spa & Resort Consultants
LLC ("LCM") (collectively, the "Trust Defendants") have
moved to dismiss the Verified Amended Complaint (the
"Complaint"), pursuant to Rule 12(b)(3) of the Federal
Rules of Civil Procedure, for improper venue.  Nominal
Defendant Gurney's Inn Resort & Spa Ltd. ("Gurney's") has
also moved to dismiss the Complaint for improper venue,
pursuant to Rule 12(b)(3), or to transfer the action to the
Eastern District of New York, pursuant to 28 U.S.C.
§ 1404(a).  Plaintiff Linda Benjamin ("Benjamin" or the
"Plaintiff") has moved under Rule 65(a) for a preliminary
injunction to bar all Defendants, including Directors
Thomas Carusona ("Carusona") and Christopher Bennett
("Bennett"), from using any of Gurney's assets to pay legal
fees or expenses in connection with this action or related
actions, and to bar all Defendants from preventing Class A
shareholders who have failed to pay a special assessment
from voting for a Class A Director at the annual meeting
scheduled for November 8, 2010.  On November 1, 2010, the
Court entered an Order to Show Cause as to why it should

1

not grant a preliminary injunction barring Defendants and
Gurney's from taking any action to amend the Bylaws or
Certificate of Incorporation of Gurney's.

Upon the findings and conclusions set forth
below, the Trust Defendants' motion to dismiss is granted
as to the Trust Defendants, and Gurney's motion to dismiss
or transfer is denied as to Gurney's, Carusona, and
Bennett.  The motion to enjoin indemnity is denied, the
motion to enjoin Defendants from preventing Class A
shareholders from voting is granted, and the motion to bar
amendment to the Bylaws and Certificate of Incorporation is
granted.

**The Parties**

Benjamin is a Connecticut resident and the only
Class A director of Gurney's.  (Compl. ¶ 8.)

Carusona and Bennett are the other two members of
the board of directors of Gurney's.  Both are residents of
New York.    (Id. ¶¶ 9-10.)

Lola Cooper Montemarano and Keith Cooper are Nevada residents. They are being sued in their capacity as Trustees of the Liquidating Trust. The Liquidating Trust holds a purchase money consolidated mortgage on Gurney's property in the amount of approximately $2.7 million, is allegedly the beneficial owner of all 2,700,000 authorized Class B shares, and allegedly holds an interest in approximately 61,250 unsold Class A shares. The address used by the Liquidating Trust is 290 Old Montauk Highway, Montauk, New York 11954. (Id. ¶¶ 11-13.)

LCM is a Nevada limited-liability company managed by Lola Cooper Montemarano, and located at 1349 Galleria Drive, Suite 200, Henderson, Nevada 89014-8264. LCM has entered into a consulting agreement with Gurney's pursuant to which it provides one consultant to Gurney's and for which it receives annual compensation, as well as free room and board during the summer and reasonable travel and other expenses. (Id. ¶ 14.)

Gurney's was formed on July 1, 1981 and is located at 290 Old Montauk Highway, Montauk, New York 11954. Gurney's filed for Chapter 11 bankruptcy in 1994 and was reorganized in 1999. (Id. ¶ 15.)

## Prior Proceedings

Benjamin filed her initial complaint on November 23, 2009, alleging a violation of Section 720(b) of the New York Business Corporation Law ("BCL") and common law breach of fiduciary duty, and seeking a declaratory judgment, an injunction, reorganization of the board of directors, an accounting and damages. The original complaint named the Liquidating Trust as a defendant, but the action against the Liquidating Trust was voluntarily dismissed without prejudice on February 8, 2010.

By Order to Show Cause, dated February 8, 2010, Benjamin moved for injunctive relief seeking to prevent Carusona and Bennett from receiving any money from Gurney's for fees or expenses in connection with this litigation and to bar any amendment to the Bylaws or the Certificate of Incorporation. In an Opinion dated April 21, 2010, the motion was denied because Benjamin failed to establish the threat of immediate and irreparable harm.

Following a preliminary conference on May 19, 2010, and the entry of a case management plan on May 26, 2010, Benjamin filed the Verified Amended Complaint (the "Complaint") on August 25, 2010. In the Verified Amended Complaint, Benjamin added the Trust Defendants and alleged breach of fiduciary duty, waste, oppression, unjust enrichment and self-dealing. Subject matter jurisdiction of this action is based solely on diversity of citizenship. (Compl. ¶ 7.)

On September 24, 2010, the Trust Defendants filed a motion to dismiss the Complaint, pursuant to Rule 12(b)(3), for improper venue, and Gurney's moved to dismiss the Complaint for improper venue, pursuant to Rule 12(b)(3), or to transfer the action to the Eastern District of New York, pursuant to 28 U.S.C. § 1404(a).

On the same date, Benjamin renewed her motion for a preliminary injunction to bar Defendants from using Gurney's assets to pay for the legal fees or expenses incurred by any Defendants in this or related actions, and to bar Defendants from preventing Class A shareholders who have failed to pay a special assessment from voting for a

Class A Director at the annual meeting scheduled for
November 8, 2010.

By Order to Show Cause, dated November 1, 2010,
Benjamin sought a preliminary injunction barring Defendants
and Gurney's from taking any action to amend the Bylaws or
Certificate of Incorporation of Gurney's.

The motions to dismiss and/or transfer and for a
preliminary injunction were marked fully submitted and
heard on October 27, 2010, and the Order to Show Cause was
heard on November 4, 2010.

**The Facts**

The facts have been set forth in the declarations
submitted by the parties and are not in dispute except as
noted below.

Gurney's, a popular resort, spa, restaurant and
conference center, was founded in 1926 and incorporated as
a timeshare cooperative corporation in 1981. In 1982,
Gurney's began selling timeshare units. Gurney's
Certificate of Incorporation, as amended, provides for a

capital structure consisting of 750,000 Class A shares and 2,700,000 Class B shares. Most of the authorized Class A shares were issued to timeshare owners and all of the authorized Class B shares were issued to the holders of the purchase money mortgage, including the Liquidating Trust, which currently holds all Class B shares.

Gurney's filed for Chapter 11 bankruptcy in 1994 and was reorganized in 1999. (Compl. ¶ 15.) The First Amended Plan of Reorganization (the "Reorganization Plan") provided that:

(a) holders of Class A and Class B shares retained their interests unimpaired (section 3.2);

(b) the institutional first mortgage was changed to a $3,500,000 principal, ten-year note, bearing interest at 10% per annum (section 4.2);

(c) the purchase money second mortgage, held by the Montemarano/Cooper Family through the Liquidating Trust, was reduced to a principal of $2,700,000, with repayment of principal and payment of interest restricted and possibly abated in the event Gurney's operating cash

flow is insufficient, as defined in the Reorganization Plan (section 4.3);

(d)   the Liquidating Trust also received "a future interest in 50% of all unsold shares and proprietary leases, which future interest shall mature on the earlier of the date of the sale of the real property or December 31, 2032" (section 4.8); and

(e)   Article III, Section 2 of Gurney's Bylaws was amended to permit the Class A shareholders to elect one director and the Class B shareholders the right to appoint the remaining directors (section 6.2(b)); no other amendment to the Bylaws was authorized.

Benjamin was elected to the board of directors in May 2009 and currently serves as the member elected by the Class A shareholders.  Carusona and Bennett serve as the members elected by the Class B shareholders.

Benjamin alleges that all of the board of director meetings since the reorganization that were not held by telephone were held at the offices of Eaton & Van Winkle LLP, Gurney's former corporate counsel, in

8

Manhattan. (Compl. ¶ 18.) According to Defendants, board of director meetings during this time, which were sometimes held as frequently as twice in a month, were regularly held at the Gurney's hotel or at another location in Long Island. (Decl. of Vincent J. McGill, dated Sept. 23, 2010 ("McGill Decl.") ¶ 2.) Article II, Section 1 of the Gurney's Bylaws mandates that the annual shareholders meetings take place "in the Borough of Manhattan, City of New York." However, according to Defendants, the annual shareholder meetings were regularly held in Long Island at the hotel. Following Benjamin's election to the board of directors in 2009, at least three but no more than four board meetings have been held in Manhattan. (McGill Decl. ¶ 5; Declaration of Linda Benjamin, dated Oct. 13, 2010 ("Benjamin Decl.") ¶ 3.)

Benjamin also alleges that David Clurman, an important potential witness who was the draftsman of Gurney's Interval Proprietary Lease, resides in Manhattan and that Clurman's law office is located in Manhattan. (Opp. 12.)[1]

---

[1]    On October 5, 2010, Benjamin served a subpoena upon Clurman to give deposition testimony and serve documents, which Gurney's moved to quash on October 25, 2010. Oral argument on that motion is currently scheduled for November 17, 2010.

According to Defendants, much of the post-bankruptcy conduct giving rise to Benjamin's claims, which involve the operation and management of Gurney's, the elections of Carusona and Bennett, and the restructuring and satisfaction of the Trust Mortgage, occurred in the Eastern District of New York, where Gurney's is located. (McGill Decl. ¶ 4-5.) Additionally, many key documents, including the employment agreements and consulting agreements, were negotiated and executed in Long Island. (Id. ¶ 8.) Likewise, performance of critical documents, such as the First Amended Plan of Reorganization, the Interval Proprietary Lease, the Trust Mortgage and the Trust Agreement, occurred in Long Island. (Id.) The Gurney's bankruptcy action was venued in the Eastern District of New York. (Id. ¶ 6.) In addition, all of Gurney's banking and financial transactions take place in Long Island. (Id. ¶ 7.)

Although the Class B shareholders control the board of directors, timeshare owners, all of whom are Class A shareholders, are assessed maintenance and special assessments to cover all of Gurney's expenses.

At a board meeting held on January 21, 2010, the directors discussed proposed amendments to the Bylaws and Certificate of Incorporation and adopted a resolution authorizing a shareholders vote on the amendments at a special meeting. Carusona and Bennett, acting as the appointed Class B directors, then set May 14, 2010 as the date for the annual shareholders meeting and proposed that the amendments be considered at that meeting. The May 14 meeting was cancelled by Carusona and Bennett before the meeting was convened.

By letter dated September 7, 2010, Paul Montemarano, Gurney's General Manager and CEO, informed the Class A shareholders that a special assessment of $552,123 would be imposed, based on a charge of $1.98 per share. According to Benjamin, this assessment is intended to pay the legal fees of the Defendants. As of mid-October 2010, approximately 40% of Class A shareholders had paid the special assessment.

Carusona and Bennett, acting as the appointed Class B directors, set November 8, 2010, as the date of an annual shareholders meeting to take place in Montauk, Long Island. The new proxy materials sent to Class A

shareholders in connection with the November 8 shareholders meeting sets a record date of October 15 and includes the following language preventing shareholders who have not paid the special assessment from voting: "Only those Shareholders who, as of the commencement of the Annual Meeting on November 8, 2010, have paid maintenance fees and special assessments will be entitled to vote at the annual meeting."

The agenda for the shareholders meeting includes the election of a new Class A director, a proposed amendment to the Certificate of Incorporation and a proposed amendment to the Bylaws. The Certificate of Incorporation is proposed to be amended by the addition of the following language:

> The personal liability of the directors of the Corporation is eliminated to the fullest extent permitted by the provisions of paragraph (b) of Section 402 of the Business Corporation Law, as the same may be amended and supplemented.

The Bylaws are proposed to be amended to change Article III, Section 1, to read as follows:

> The number of Directors constituting the entire Board of Directors of the Corporation shall be not less than three (3) nor more than seven (7), as may be fixed from time to time by

resolution of the shareholders of the Board of Directors; provided that the number of Directors constituting the entire Board of Directors shall be three (3) until such a resolution is adopted by the shareholders or the Board of Directors, and further provided that in no event shall the term of any incumbent Director be reduced by the adoption of such resolution.

**The Motion to Dismiss is Granted as to the Trust**
**Defendants and Denied as to the Remaining Defendants**

I.   The Rule 12(b)(3) Standard

Federal Rule of Civil Procedure 12(b)(3) provides that a defendant may move to dismiss a complaint on the grounds of improper venue. See Fed. R. Civ. P. 12(b)(3). The standard for defeating a motion to dismiss under Rule 12(b)(3) is similar to the standard under Rule 12(b)(2). Arma v. Buyseasons, Inc., 591 F. Supp. 2d 637, 648 (S.D.N.Y. 2008). "[T]he burden of showing that venue in the forum district is proper falls on the plaintiff." U.S.E.P.A. ex rel. McKeown v. Port Auth. of N.Y. & N.J., 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001). However, absent an evidentiary hearing, "'the plaintiff need only make a prima facie showing of [venue].'" Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005) (quoting

CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 364-65 (2d
Cir. 1986)).  "In a case involving multiple claims, the
plaintiff must show that venue is proper for each claim
asserted, but dismissal of an improperly venued claim is
not warranted if it is factually related to a properly
venued claim and the claims could be considered 'one cause
of action with two grounds of relief.'"  McKeown, 162 F.
Supp. 2d at 183 (citation omitted).

## II.  Venue is Improper Under 28 U.S.C. § 1391(a)(2)

When jurisdiction is founded solely upon
diversity and all defendants do not reside in the same
state, venue is proper in a district where a "substantial
part of the events or omissions giving rise to the claim
occurred."  28 U.S.C. § 1391(a)(2).  The determination of
substantiality for venue purposes "is more a qualitative
than a quantitative inquiry, determined by assessing the
overall nature of the plaintiff's claims and the nature of
the specific events or omissions in the forum, and not by
simply adding up the number of contacts."  Daniel v. Am.
Bd. of Emergency Med., 428 F.3d 408, 432-33 (2d Cir. 2005).

Defendants contend that Benjamin cannot demonstrate that a substantial part of the events or omissions giving rise to her claims occurred in the Southern District of New York. All of the events giving rise to Benjamin's claims, which concern alleged breaches of fiduciary duty, oppression and waste, and challenges to the post-bankruptcy operation, management and control of Gurney's, occurred in the Eastern District of New York, where Gurney's is located.

According to Defendants, the only asserted nexus between Benjamin's claims and this district is the fact that three or four board of director meetings were held in Manhattan after Benjamin was elected to the board of directors in May 2009, at the offices of Gurney's former corporate counsel. Defendants have contended that these meetings are not material to the claims in this action, none of which are connected to the specific board meetings that took place in Manhattan. Benjamin argues that these meetings are "intrinsically material" to her claims, because this action is predicated on the conduct of the Class B directors, conduct that was planned and effectuated at these meetings. However, there is no evidence that anything that occurred or was decided at any board meeting

held in Manhattan gave rise to Benjamin's claims. See,
e.g., Friedman v. Revenue Mgmt. of New York, Inc., 38 F.3d
668, 671-72 (2d Cir. 1994) (finding venue in the Southern
District of New York improper where none of Defendant's
contacts with the district gave rise to the claims before
the Court); Nat'l Lighting Co. v. Univercol-Hillel Hoffman
& Sons, Ltd., No. 03 CV 8618, 2004 WL 2546804, at *2
(S.D.N.Y. Nov. 10, 2004) (finding venue improper despite
insubstantial contacts with the Southern District of New
York where the events that gave rise to the claims occurred
in a different district).

Moreover, even if, as Benjamin argues, the
planning and effectuating of Defendants' scheme occurred at
such meetings, it appears that the meetings in Manhattan
represent only a fraction of the total board meetings that
have taken place since the reorganization, or even since
Bennett and/or Carusona were elected. It appears from the
parties' submissions that approximately 21 board meetings
were held in 2007 and 22 were held in 2008, and there is no
indication that any of these meetings were held in this
district. According to Defendants, board of director
meetings, which were sometimes held as frequently as twice

in a month, were regularly held at the Gurney's hotel or at another location in Long Island.  (McGill Decl. ¶ 2.)

Benjamin also cites Article II, Section 1, of the Bylaws, which states that the annual shareholder meetings "shall be held in the Borough of Manhattan, City of New York."  (Opp. 9.)  According to Defendants, however, the annual shareholder meetings have been regularly held in Long Island at Gurney's, for more than ten years.[2]  Indeed, the shareholder meetings at which Benjamin, Carusona and Bennett were elected all occurred at Gurney's.

The final nexus between the claims and this district alleged by Benjamin is that David Clurman, an attorney who allegedly drafted Gurney's Interval Proprietary Lease, resides in Manhattan and that Clurman's law office is located in Manhattan.  (Opp. 12.)  Defendants contend Benjamin has alleged no facts to support her claim that Clurman is among the most important individuals in this action, and the fact that he is not named anywhere in the Complaint supports this contention.  Even if Clurman is a material witness in this case, his residence in this

---

[2]     Defendants also argue that the Bylaws were amended in 1991 to change the location of annual shareholder meetings from Manhattan to Suffolk County.  Plaintiffs dispute the validity of this amendment.

district does not satisfy the substantiality requirement of § 1391(a)(2).

Accordingly, although three or four board meetings occurred in this district, the Bylaws might call for shareholders meetings to occur here, and one witness resides here, there is no evidence that such conduct or contacts with this district gave rise to the claims in this action. Regardless, even if credited, the alleged nexus between the conduct and this district does not rise to the level of being "substantial" under § 1391(a)(2).

### III. Carusona, Bennett and Gurney's Waived the Defense of Improper Venue

Benjamin argues that, irrespective of the merit of their venue argument, Defendants waived the defense by moving to dismiss the original complaint and failing to object to venue at that time.

A defendant who wishes to raise the defense of improper venue "must do so in its first defensive move, be it a Rule 12 motion or an answer." Hartling v. Woodloch Pines, Inc., No. 97 Civ. 2587, 1998 WL 575138, at *1

(S.D.N.Y. Sept. 8, 1998). "[T]he omission of a Rule 12 motion from a party's motion to dismiss results in waiver of the defense unless the defense was not available at the time of the motion." Arkwright Mut. Ins. Co. v. Scottsdale Ins. Co., 874 F. Supp. 601, 604 (S.D.N.Y. 1995); see Fed. R. Civ. P. 12(h)(1) ("A party waives any defense listed in Rule 12(b)(2)-(5) by . . . failing to either (i) make it by motion under this rule; or (ii) include it in a responsive pleading . . . .").

In her original complaint, Benjamin named Carusona, Bennett, and the Liquidating Trust as Defendants. On February 8, 2010, the Liquidating Trust moved to dismiss pursuant to Rule 12(b)(2) and (5), but did not raise any objection to venue. On the same day, Benjamin filed a notice of voluntary dismissal, pursuant to Rule 41(a)(1), dismissing the complaint against the Liquidating Trust.

Benjamin argues that the Liquidating Trust's February 8 motion to dismiss constitutes its "first defensive move" and that, because it failed to object to venue at the time, the Liquidating Trust has therefore waived the right to object to venue at this stage. See Del Med. Imaging Corp. v. CR Tech USA, Inc., No. 08 Civ. 8556,

2010 WL 1487994, at *9-*10 (S.D.N.Y. Apr. 13, 2010). The
Liquidating Trust is no longer a party and neither the
trustees of the Liquidating Trust, Lisa Cooper Montemarano
and Keith Cooper, nor LCM were formally parties at the time
of the initial motions to dismiss. Nonetheless, Benjamin
contends that those parties "implicitly acquiesced to the
[Liquidating] Trust's waiver" because the Liquidating Trust
was under the control of the trustees and LCM is under the
control of Lola Cooper Montemarano. (See Opp. 7 n.3.)
However, venue is "a privilege personal to each defendant."
Agricultural Ins. Co. Inc. v. Ace Hardware Corp., No. 98
Civ. 8708, 2000 WL 1568313, at *1 (S.D.N.Y. Oct. 20, 2000)
(quoting 1 Moore, Federal Practice ¶ 0.146(6), at 1911 (2d
ed. 1964)); Concession Consultants, Inc. v. Mirisch, 355
F.2d 369, 371 n.1 (2d Cir. 1966). Accordingly, waiver by
the Liquidating Trust does not result in waiver of any
objections to venue by the trustees or LCM. Neither the
trustees nor LCM participated in any pre-trial proceedings
prior to their filing the instant motion. They were first
brought into the action when they were named in the
Verified Amended Complaint, after which their first
defensive move was to file this motion to dismiss.

On the other hand, on June 25, 2010, Carusona and Bennett filed their motion to dismiss, pursuant to Rule 12(b)(6), and did not raise any objection to venue. Gurney's joined in the motion and similarly failed to object to venue. Since this motion constituted the "first defensive move" by Carusona, Bennett and Gurney's, their objections to venue have been waived. See Del Med. Imaging, 2010 WL 1487994, at *9; Tribune Co. v. Purcigliotti, No. 93 CIV. 7222, 1996 WL 457290, at *1 (S.D.N.Y. Aug. 14, 1996). Moreover, Carusona, Bennett and Gurney's implicitly waived their venue objection by actively participating in pre-trial proceedings, including making motions, defending against Benjamin's February 8 motion for a preliminary injunction, entering into a confidentiality stipulation that was "So Ordered," negotiating a scheduling order, and participating in discovery. See Ferraro Foods, Inc. v. M/V IZZET INCEKARA, No. 01 CIV. 2682, 2001 WL 940562, at *3 (S.D.N.Y. Aug. 20, 2001) ("The improper venue defense may also be waived by implication when a party takes actions that are inconsistent with it.") (citing cases).

Accordingly, the Trust Defendants' motion to dismiss for improper venue is granted, but the motion to

dismiss is denied as to Carusona, Bennett and Gurney's due to their waiver of any objection regarding venue.  See Rains v. Cascade Indus., Inc., 258 F. Supp. 974, 976-77 (S.D.N.Y. 1966) (severing action for one defendant, in the "interest of justice," so as to render venue proper against remaining defendants).

## The Motion to Transfer is Denied

Gurney's also requests in the alternative that the case be transferred to the Eastern District of New York, pursuant to 28 U.S.C. § 1404(a), which states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Unlike a motion under Rule 12(b)(3), which is based on a forum's impropriety, a motion under § 1404(a) turns on considerations of convenience.  Waiver of objection to improper venue does not preclude transfer pursuant to § 1404(a).  Instead, "'motions for transfer lie within the broad discretion of the courts and are determined upon notions of convenience and fairness on a case-by-case basis.'"  Linzer v. EMI Blackwood Music Inc.,

904 F. Supp. 207, 216 (S.D.N.Y. 1995) (quoting In re

Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992)).


When deciding a motion to transfer, the court

must first determine whether the action "might have been

brought" in the transferee court.  Here, the parties do not

dispute that the case might have been brought in the

Eastern District of New York.


Second, the court must determine whether,

considering the "convenience of parties and witnesses" and

the "interest of justice," a transfer is appropriate.

Wilshire Credit Corp. v. Barrett Capital Mgmt. Corp., 976

F. Supp. 174, 180 (W.D.N.Y. 1997).  To make this

determination, courts in the Southern District of New York

consider the following factors:  (1) the convenience of

witnesses; (2) the location of relevant documents and

relative ease of access to sources of proof; (3) the

convenience of the parties; (4) the locus of the operative

facts; (5) the availability of process to compel attendance

of unwilling witnesses; (6) the relative means of the

parties; (7) the forum's familiarity with governing law;

(8) the weight accorded to a plaintiff's choice of forum;

and (9) trial efficiency and the interests of justice.  See

Capitol Records, Inc. v. MP3tunes, LLC, No. 07 Civ. 9931, 2008 WL 4450259, at *5 (S.D.N.Y. Sept. 29, 2008) (citing American Eagle Outfitters, Inc. v. Tala Bros. Corp., 457 F. Supp. 2d 474, 477 (S.D.N.Y. 2006)).

Several of the relevant factors have little or no applicability when the requested transfer is from the Southern District to the Eastern District, including the convenience of witnesses, parties, and sources of proof, familiarity with the governing law, the availability of process to compel attendance of unwilling witnesses, and the parties' financial circumstances. See, e.g., Legrand v. City of New York, No. 09 Civ. 9670, 2010 WL 742584, at *4 (S.D.N.Y. Mar. 3, 2010) ("The proximity of the two districts renders several of the factors relatively insignificant in this inquiry. Thus, witnesses could be compelled to attend court proceedings in either district and the parties' financial circumstances would not interfere with them participating in proceedings in either district. Finally, both federal courts are familiar with the governing law and could address the case efficiently."); O'Hopp v. ContiFinancial Corp., 88 F. Supp. 2d 31, 36 (E.D.N.Y. 2000) ("Because of the close proximity between the Southern and Eastern District courthouses, it

cannot be said that one venue is significantly more convenient than the other for the parties, their witnesses, or with respect to access to sources of proof.").

The only remaining factors to consider are the weight accorded to a plaintiff's choice of forum, the locus of the operative facts, and trial efficiency and the interests of justice.

"Courts in this circuit are loath to disturb a plaintiff's choice of forum absent a showing that the balance of convenience and justice weighs heavily in favor of transfer." It's a 10, Inc. v. PH Beauty Labs, Inc., No. 10 Civ. 972, 2010 WL 2402848, at *2 (S.D.N.Y. June 14, 2010) (citing cases). Gurney's contends that no weight should be given to Benjamin's choice of forum because she is a resident of Connecticut, not New York. "However, even if a plaintiff is not a resident of its chosen forum, the choice will be respected as long as the balance of factors does not warrant a transfer." Id. Benjamin's choice of forum therefore weighs in favor of retaining jurisdiction.

Although the events giving rise to Benjamin's claims occurred primarily in the Eastern District, the

occurrence of three or four board meetings in Manhattan and the possibility that the Bylaws call for annual meetings to take place in Manhattan provide some nexus with Manhattan, even if insubstantial.  Ultimately, this factor weighs in favor of transfer to the Eastern District.

The burden is on the moving party to "make a 'clear-cut showing' that transfer is in the best interests of the litigation."  Smart v. Goord, 21 F. Supp. 2d 309, 315 (S.D.N.Y. 1998) (citing cases).  Here, however, Gurney's has neglected to address this issue.  This Court is familiar with the complex facts of this action and has issued a substantive decision in connection with Benjamin's initial motion for a preliminary injunction.  Ultimately, given that most factors in the transfer analysis are neutral and in light of Benjamin's selection of this forum and this Court's familiarity with and involvement in this case, the interests of justice are best served by retaining jurisdiction.

Gurney's motion to transfer is therefore denied.

**Benjamin's Motion to Enjoin Gurney's**
**from Indemnifying Defendants Is Denied**

I. The Preliminary Injunction Standard

A party seeking a preliminary injunction must
show:  "(1) the likelihood of irreparable injury in the
absence of such an injunction, and (2) either (a)
likelihood of success on the merits or (b) sufficiently
serious questions going to the merits to make them a fair
ground for litigation plus a balance of hardships tipping
decidedly toward the party requesting the preliminary
relief."  Zino Davidoff SA v. CVS Corp., 571 F.3d 238, 242
(2d Cir. 2009) (quoting Fed. Express Corp. v. Fed.
Espresso, Inc., 201 F.3d 168, 173 (2d Cir. 2000)).

Because irreparable harm "is 'the single most
important prerequisite for the issuance of a preliminary
injunction,'" the "'moving party must first demonstrate
that such injury is likely before the other requirements
for the issuance of an injunction will be considered.'"
Rodriguez ex rel. Rodriguez v. DeBuono, 175 F.3d 227, 233-
34 (2d Cir. 1999) (citations omitted).  To establish

irreparable harm, the injury must be "neither remote, nor speculative, but actual and imminent." Shapiro v. Cadman Towers, Inc., 51 F.3d 328, 332 (2d Cir. 1995).  In addition, the injury "must be one requiring a remedy of more than mere money damages." Third Church of Christ v. City of New York, 617 F. Supp. 2d 201, 215 (S.D.N.Y. 2008) (quoting Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989)).

II. Neither Irreparable Harm nor Likelihood of
    Success on the Merits Have Not Been Established

For the reasons set forth in greater detail in the April 21, 2010 Opinion denying Benjamin's request for a preliminary injunction, Benjamin still cannot show irreparable harm or a likelihood of success on the merits, because Carusona and Bennett are entitled to defense and potential indemnification under the Bylaws and the BCL.

Specifically, Article VII of the Bylaws contains the following language:

> Nothing contained in this provision
> shall limit any right of
> indemnification to which any director
> or any officer may be entitled to by
> contract or under any law now or
> hereinafter enacted.

Also, as explained in the April 21, 2010 Opinion:

> Under BCL § 723(c), a company may advance defense costs to a sued director upon the posting of an undertaking. In the event of a finding against a director of bad faith or dishonesty, however, no indemnification may be had and any advanced expenses must be repaid to the company. BCL §§ 721, 725(a). Carusona and Bennett have provided the undertaking required under BCL §§ 723(c) and 725(a) for advancement of defense costs, namely, that they will repay Gurney's if it is ultimately proven that they are not entitled to indemnification.

Benjamin v. Carusona, No. 09 Civ. 9722, 2010 WL 1645047, at *5 (S.D.N.Y. April 22, 2010).

Benjamin has not demonstrated a likelihood of harm from Gurney's advancing Carusona and Bennett's legal fees in this action or in any related actions.

The Liquidating Trust has a contractual right to indemnification arising out of the Trust Mortgage. (See Trust Mortgage at ¶ 12.) Benjamin has offered no evidence to indicate a likelihood or harm or of success on the merits in her efforts to enjoin indemnification of the Liquidating Trust.

29

Benjamin argues, in essence, that the most recent special assessment was improper because it was not approved by the Class A shareholders, pursuant to Paragraph 3(e) of the Interval Proprietary Lease, and that the Class A shareholders have not approved Defendants' use of Gurney's assets, including funds obtained through the most recent special assessment, for legal fees and expenses incurred in this or related actions. As the Court noted in the April 21, 2010 Opinion, "the Class A shareholders under Paragraph 3(e) of the Lease are granted control of the services for which they are liable." However, upon argument, the parties appeared to agree that the scope of the "services" covered by Paragraph 3(e) is an issue to be decided at a later date, as it has not been presented for resolution by this Court.

**Defendants Are Enjoined from Requiring Payment of the Special Assessment as a Condition Precedent to Voting**

Benjamin has moved for an injunction "directing defendants to allow all Class A shareholders who are otherwise current in their obligations to Gurney's, to vote for the Class A director irrespective of whether they have paid the special assessment." (Benjamin Mot. 2.)

Defendants argue that the requirement that Class A shareholders be current in their dues, including paying the special assessment, to be eligible to vote at the annual shareholders meeting has a rational business purpose: "Gurney's needs capital for its operations and management reasonably believes that Gurney's is more likely to collect the assessment if shareholders must pay the assessment to vote." (Opp. 12.) Defendants contend that this is all that is required for the decision to be protected by the business judgment rule. (Id. 13 (citing Estate of Detwiler v. Offenbacher, 728 F. Supp. 103, 156 (S.D.N.Y. 1989)).) According to Defendants, with the exception of one special shareholders meeting in March 2009, this requirement "always has been and continues to be Gurney's policy." (Id.)

However, BCL § 612(a) provides that "[e]very shareholder of record shall be entitled at every meeting of shareholders to one vote for every share standing in his name on the record of shareholders, unless otherwise provided in the certificate of incorporation." Nothing in the Certificate of Incorporation conditions Class A shareholders' right to vote on their being current on all

31

maintenance charges and special assessments.  As such,

Defendants' proposed limitations on Class A shareholders

are ineffective.  See Aini v. Garau, 244 A.D.2d 442, 442

(N.Y. App. Div. 1997) (holding that "limitations on the

right to vote" not set forth in the certificate of

incorporation are ineffective); Madison v. Striggles, 228

A.D.2d 170, 170 (N.Y. App. Div. 1996) (depriving a

shareholder of the right to vote "can be accomplished only

through a provision in the certificate of incorporation").

For these reasons, Defendants' attempt to exclude

from the vote at the upcoming annual shareholder meeting

any Class A shareholders who have not paid the special

assessment is an impermissible limitation on the

shareholders' right to vote.  Accordingly, because Benjamin

has demonstrated a likelihood of success on the merits, her

motion to enjoin is granted.

**Defendants Are Enjoined from Amending the
Certificate of Incorporation and Bylaws**

As an initial matter, it appears that the board

of directors never properly authorized the presentation of

the proposed amendments at the annual shareholder meeting

to be held on November 8, 2010.  Defendants cite a board
meeting held on January 21, 2010, in which the directors
discussed similar proposed amendments to be considered at
the originally scheduled May 14, 2010 shareholders meeting.
However, the second resolution adopted at the board's
January meeting only authorizes a shareholders vote at a
special meeting, as opposed to an annual meeting, and then
only for the meeting scheduled for May 14, 2010.  The
November 8 meeting cannot be viewed as an adjournment of
the May 14 meeting, because the original meeting was never
convened, and Article II, Section 4, of the Bylaws only
allows adjournment "at the meeting."  Furthermore,
Defendants issued entirely new proxy materials for the
November 8 meeting, and set a record date of October 15,
indicating that the May 14 meeting was cancelled.  As a
result, the resolution authorizing consideration of the
proposed amendments at the May 14 meeting does not apply to
the November 8 meeting.

        Even if consideration of the amendments had been
properly authorized, amendment of the Bylaws is only
permitted "subsequent to cancellation of all Class B
stock," pursuant to Article XII of the Bylaws and Article
Fourth(b) of the Certificate of Amendment of the

Certificate of Incorporation.  Any amendment to the Bylaws or the Certificate of Incorporation that would render these provisions meaningless is improper.

Article Eighth of the Certificate of Incorporation provides that "[t]he Certificate of Incorporation may be amended . . . by the affirmative vote of the holders of two-thirds of the shares of the Corporation issued and outstanding."  Benjamin contends, and the Court agrees, that this provision must be read to apply only to the Class A shareholders.  If this provision were read to allow all shareholders, including the Class B shareholders, to amend the Certificate of Incorporation, the Class A shareholders would be effectively disenfranchised and their property interests impermissibly compromised.  Accordingly, the Certificate of Incorporation may only be amended by a two-thirds vote of the Class A shares.

However, because consideration of the proposed amendments at the November 8 annual shareholders meeting was not properly authorized by the board of directors, the motion to enjoin amendment is granted.

## Conclusion

The motion of the Trust Defendants to dismiss the action for improper venue is granted as to the Trust Defendants, and Gurney's motion to dismiss or transfer is denied as to Gurney's, Carusona, and Bennett. The motion to enjoin indemnity is denied, the motion to enjoin Defendants from preventing Class A shareholders from voting is granted, and the motion to bar amendment to the Bylaws and Certificate of Incorporation is granted.

It is so ordered.

**New York, NY**
**November 5, 2010**

ROBERT W. SWEET
U.S.D.J.